IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MILLCREEK COMMUNITY HOSPITAL, )
)
)
)
Plaintiff, )
v. ) C.A. No. 07-205 Erie
) Judge McLaughlin
FAIRVIEW RADIOLOGY, P.C., )
)
)
Defendant. )

**MEMORANDUM OPINION**

McLAUGHLIN, SEAN J., J.

This matter is before the Court upon Defendant's Motion to Dismiss for failure to state a claim pursuant to F.R.C.P. 12(b)(6).

## I. BACKGROUND

Defendant, Fairview Radiology, P.C., ("Defendant" or "Fairview") is a professional organization that provides radiological and other services to various health care facilities. (Complaint ¶ 8). On February 14, 2005, Fairview entered into a contract with Plaintiff, Millcreek Hospital ("Plaintiff" or "Millcreek"), styled a Professional Services Agreement Including Managerial Services Component ("Agreement"). (Complaint ¶ 9; Exhibit A). The Agreement became effective on April 21, 2005, and obligated Fairview to provide certain professional radiological services for Millcreek in exchange for the "sole right to bill patients and third parties for the Radiology Services rendered . . . and to collect from such persons all amounts owed for such services." (Complaint, Ex. A, § 9.01).

In addition, Section 8.05(b) of the Agreement provided the following income guarantee for Fairview:

1

> Hospital to provide Fairview Radiology with an initial 1st year income guarantee provision totaling $800,000 which will include $35,000 cost for one physician relocation and recruitment, to be advanced as follows: $98,750 at contract signing followed by $63,750 via wire transfer on each of the following days: 4-21-05, 5-21-05, and 6-21-05. Subsequent advances will be on a monthly basis via wire on the 21st of the month through the remainder of the 1st year of service in the amounts equal to $63,750 less the prior 30-day net cash value of collected professional billings by Fairview Radiology. Following the 6th month of the 2nd year of clinical service, there will be a reconciliation of actual cash collected versus income guarantee advanced with the understanding that if total collections are greater than $800,000 for the 1st year of activity, [Fairview] will reimburse to [Millcreek] in equal monthly payments over the remaining life of the professional contract, i.e., any payments due [Millcreek] by [Fairview] will be made over the last 17 months of this three-year contract.

(Complaint, Ex. A, § 8.05(b)). Essentially, this section guaranteed that Fairview would receive at least $800,000 in income during the first year. This guarantee provision provided for periodic payments from Millcreek to Fairview in order to insure that the $800,000 benchmark would be reached in the event that patient billing proceeded slowly during the infancy of the Agreement. It also provided for a "reconciliation" after "the 6th month of the 2nd year" of the Agreement at which time Fairview would "reimburse" Millcreek if "total collections [were] greater than $800,000 for the 1st year" of the Agreement. As discussed more thoroughly below, the heart of the dispute underlying this litigation is the meaning of the term "total collections," concerning which each party offers a different interpretation.

Fairview collected $454,658 from patient billings during the first year of the Agreement. (Complaint ¶ 26). In addition, Millcreek forwarded $474,431 to Fairview during that first year as income guarantee payments. (Complaint ¶ 25). On January 13, 2006, Fairview provided notice to Millcreek that it intended to terminate the Agreement. (Complaint ¶ 22). Subsequent to this notice, the parties agreed to terminate the Agreement on February 3, 2006. (Complaint ¶ 24). On January 30, 2006, Fairview and Millcreek entered into a second contract, styled the Agreement for Nighthawk Services ("Nighthawk Agreement"). (Complaint ¶ 34). Pursuant to the Nighthawk

Agreement, Fairview agreed to provide "uninterrupted emergency interpretation via teleradiology" during night and weekend hours" in return for monthly payments of $12,000 from Millcreek. (Complaint ¶¶ 35, 40). Fairview also agreed that "[Millcreek] shall apply a portion of the [$12,000] monthly disbursement toward Fairview pay-back of prior existed income guarantee per attached schedule." (Complaint, Ex. D). The attached schedule and the Nighthawk Agreement further reflected that the "total pay-back amount" owed by Fairview to Millcreek was unknown at that time. (Id.)

On March 27, 2007, Millcreek terminated the Nighthawk Agreement in accordance with the appropriate provisions therein. (Complaint ¶¶ 43-45). In the notice of termination, Millcreek also informed Fairview that it was still owed an estimated $109,110 from Fairview based on the reconciliation obligation in the income guarantee provision of the Agreement. (Complaint ¶ 46; Ex. E). On July 5, 2007, Fairview responded by requesting an "itemization of credits and debits regarding our account." (Complaint ¶¶ 47-48, Ex. F). Fairview further indicated to Millcreek that "Fairview was anticipating an on-call schedule carried out to 2-15-08 working off credit line. As such, Fairview would appreciate a forgiveness given the advanced departure requested." (Id.)

## II. STANDARD FOR REVIEW

Rule 8(a) of the Federal Rules of Civil Procedure states that a pleading must set forth a claim for relief which contains a short and plain statement of the claim showing that the pleader is entitled to relief. A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Erickson v. Pardus, ___ U.S. ___, ___ 127 S.Ct. 2197, 2200 (2007); Neitzke v. Williams, 490 U.S. 319 (1989); Estelle v. Gamble, 429 U.S. 97 (1976). The issue is not whether the plaintiff will prevail at the end but only whether he should be entitled to offer evidence to support his claim. Neitzke; Scheuer v. Rhodes, 419 U.S. 232 (1974). As the United States Supreme Court recently held in Bell Atlantic Corp. v. Twombly, ___ U.S. ___, 127

S. Ct. 1955 (May 21, 2007), a complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Id. at ___, 1974 (rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)). The court must accept as true all allegations of the complaint and all reasonable factual inferences must be viewed in the light most favorable to plaintiff. Angelastro v. Prudential-Bache Securities, Inc., 764 F.2d 939, 944 (3rd Cir. 1985). The Court, however, need not accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3rd Cir. 2004) (citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3rd Cir. 1997)). Nor must the court accept legal conclusions set forth as factual allegations. Twombly, ___ U.S. ___, 127 S. Ct. at 1965 citing Papasan v. Allain, 478 U.S. 265, 286 (1986). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, ___ U.S. ___, 127 S.Ct. at 1965. Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id. at ___, 1974.

In other words, at the motion to dismiss stage, a plaintiff is "required to makes a 'showing' rather than a blanket assertion of an entitlement to relief." Smith v. Sullivan, 2008 WL 482469 (February 22, 2008) (quoting Phillips v. County of Allegheny, ___ F.3d ___, 2008 WL 305025, at *5 (3rd Cir. Feb. 5, 2008)). "This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." Phillips, 2008 WL 305025, at *6 (quoting Twombly, ___ U.S. at ___, 127 S.Ct. at 1965 n.3).

### III. ANALYSIS

When construing the terms of a written contract, Pennsylvania courts apply the "plain meaning" rule, determining the intent of the parties from the writing itself when possible. Duquesne Light Company v. Westinghouse Electric Corp., 66 F.3d 604, 613 (3rd Cir. 1995). Thus, "clear

contractual terms that are capable of one reasonable interpretation must be given effect." Krizovensky v. Krizovensky, 624 A.2d 638, 642 (Pa. Super. Ct. 1993). When the intent is clear nad unequivocal, extrinsic evidence may not be considered. Bohler-Uddeholm America, Inc. v. Ellwood Group, Inc., 247 F.3d 79, 93 (3rd Cir. 2001).

When the terms of a contract are ambiguous, however, extrinsic evidence may be examined to determine the intentions of the parties. Duquesne Light, 66 F.3d at 613. Ambiguity exists if the contract "is reasonably or fairly susceptible of different constructions and is capable of being understood in more sense than one and is obscure through indefiniteness of expression or has a double meaning." Bohler-Uddeholm, 247 F.3d at 93. Patent ambiguity is that which appears on the face of the instrument and arises from defective, obscure or nonsensical language. Duquesne Light, 66 F.3d at 613-14. Latent ambiguity "arises from extraneous or collateral facts which make the meaning of a written agreement uncertain although the language thereof, on its face, appears clear and unambiguous." Id. at 614.

Where a latent ambiguity is alleged, the extrinsic evidence must demonstrate that some specific term in the contract is ambiguous, rather than that the parties intended something different that was not incorporated into the contract. Bohler-Uddeholm, 247 F.3d at 93. When analyzing a potentially ambiguous term in an instrument, a court must be mindful that: (1) ambiguity does not exist merely as a result of disagreement between the parties over the meaning of the term; (2) any proffered interpretations by the parties "must be reasonable, in that there must be evidence in the contract to support the interpretation beyond the party's mere claim of ambiguity"; and (3) "the proffered interpretation cannot contradict the common understanding of the disputed term or phrase when there is another term that the parties could easily have used to convey this contradictory meaning." Id. at 94-95.

Here, Fairview and Millcreek offer contradictory interpretations of the phrase "total collections" as written into the reconciliation portion of Section 8.05(b) of the Agreement. The parties acknowledge that the term is not specifically defined in the Agreement. The crux of the

dispute is whether "total collections" refers only to money generated by Fairview from billing patients and third party payors, or whether it also includes the advancements made by Millcreek to Fairview as part of the guarantee provision. If Millcreek's interpretation is correct, Fairview's "total collections" exceeded the $800,000 cap specified in the contract and Fairview may be obligated to reimburse Millcreek for portions of the money advanced in accordance with the guarantee provision.

Fairview contends that the phrase "total collection" in Section 8.05(b) clearly and unambiguously refers only to money collected from patients. Fairview notes that Section 8.05(b) of the Agreement discusses two independent types of payments, "collections" by Fairview and "advances" by Millcreek, but refers only to "collections" in the provision detailing reconciliation. They conclude that, had both types of payment been intended to fall within the scope of the reconciliation provision, the Agreement would have stated that both "total collections *and advances*" were included in the $800,000 threshold for reimbursement. In short, Fairview urges us to find that the "plain meaning" of "total collections" encompasses only money *collected* by patients, rather than that *advanced* by Millcreek.

According to Millcreek, however, "total collections" refers to the total amount of money taken in by Fairview whether by virtue of Millcreek's cash advances or from patient billing. Millcreek notes that the phrase "total collections" in the Agreement appears at the end of the section discussing both "actual cash collected" from patients AND "income guarantee advanced," implying that it encompasses both. They also assert that Section 8.05(b) must be read in concordance with Section 9.01, which limits the financial consideration due to Fairview under the Agreement by specifying that, "[a]s the **sole** financial consideration to be received by [Fairview] for the services provided hereunder, [Fairview] shall have the sole right to bill patients and third parties for the Radiology Services rendered by [Fairview] and to collect from such persons all amounts owed for such services." (Complaint ¶ 16, Ex. A, § 9.01) (emphasis added). Millcreek contends that the only reasonable way to read the two provisions is that Section 8.05(b) guaranteed (by way of income advancements) that Fairview would make at least $800,000 in the first year of the Agreement, but

6

that Section 9.01 in conjunction with 8.05(b) requires Fairview to return the guarantee advances once the $800,000 benchmark was reached because Fairview's ultimate consideration is expressly limited to income from patient billing.

After reviewing the arguments raised in the briefs and during an oral hearing held on February 12, 2008, we conclude that Millcreek has offered an objectively reasonable interpretation of the contract sufficient to avoid dismissal for failure to state a claim. The phrase "total collections" is undefined in the Agreement, and each of the interpretations offered by the parties finds support within the four corners of the Agreement, creating an ambiguity that will require resort to extrinsic evidence to resolve.

Millcreek also contends that the offset provision in the Nighthawk Agreement and the subsequent request by Fairview for "forgiveness" of the debt constitute extrinsic evidence of the parties intent in drafting the reconciliation provision because they demonstrate conduct by the parties consistent with Millcreek's interpretation of "total collections." The extent to which Fairview's alleged request for "forgiveness" of the debt or, for that matter, any other evidence extrinsic to the contract, sheds light on the meaning of the disputed term must await the development of a fuller record along with the potential consideration of Rule 56 motions.

## IV. CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss for failure to state a claim is DENIED.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MILLCREEK COMMUNITY HOSPITAL, ) <br> ) <br> Plaintiff, ) <br> v. ) <br> ) <br> FAIRVIEW RADIOLOGY, P.C., ) <br> ) <br> Defendant. ) | C.A. No. 07-205 Erie <br> Judge McLaughlin |

## **ORDER**

AND NOW, this 30th day of September, 2008, and for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that Defendant's Motion to Dismiss for failure to state a claim is DENIED.

/s/ Sean J. McLaughlin
United States District Judge

cm: All parties of record. ___